# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| WILLIAM SCOTT SOURS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:15-cv-05075-DGK |
| | ) | |
| CHAD KARR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING SUMMARY JUDGMENT

This action arises out of Plaintiff William Scott Sours's arrest after a traffic stop in Jasper County, Missouri, on May 19, 2014. Sours sued Officer Chad Karr, Police Chief Tommy Kitch, Officer Jeremy Bland, and Detective Darren McIntosh (collectively "Defendants"), alleging a violation of his constitutional rights under 42 U.S.C. § 1983. Pending before the Court are Defendants Karr and Kitch's Motion for Summary Judgment (Doc. 92), Defendant Bland's Motion for Summary Judgment (Doc. 86), and Defendant McIntosh's Motion for Summary Judgment (Doc. 89). For the reasons explained below, the summary judgment motions are GRANTED.

### Summary Judgment Standard

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A party who moves for summary judgment bears the burden of showing there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Summary judgment is also appropriate when the plaintiff fails to establish any element of her prima facie case. *Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442, 445 (8th Cir. 1998). A court must view the facts in the light most favorable to the nonmoving party and

allow the nonmoving party to benefit from all reasonable inferences to be drawn from the evidence. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588-89 (1986).

Because Sours is proceeding *pro se*, the Court is bound to liberally construe his filings in order to do substantial justice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Native Am. Council of Tribes v. Solem*, 691 F.2d 382, 384 (8th Cir. 1982). However, a litigant's *pro se* status does not excuse him or her from compliance with the Federal Rules of Civil Procedure or Local Rules. *McNeil v. United States*, 508 U.S. 106, 113 (1993).

## Undisputed Material Facts[1]

On May 19, 2014, Karr—then an officer with the City of Duquesne Police Department—was on patrol in his dash-camera-equipped police car. At approximately 7:16 p.m., Karr stopped a car due to its improper lane use and obstructed rear license plate. Karr saw that the vehicle came from a home known to have residents who possess and manufacture methamphetamine. After stopping the car, Karr approached and made contact with Sours, the driver of the vehicle, and the passenger, Melinda Wisek. The in-dash camera, with audio, recorded the subsequent events.

Dispatch advised Karr that Sours was on probation and parole for distribution of a controlled substance. Sours told Karr that last year, he was released from federal prison for distribution of a controlled substance. Karr then asked Sours for consent to search the vehicle.

---

[1] Sours's Motion in Opposition to Defendants' Motions (Doc. 95) fails to comply with Local Rule 56.1(a), which states that "[s]uggestions in opposition to a motion for summary judgment shall begin with a section that contains a concise listing of material facts as to which the party contends a genuine issue exists. . . . All facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party." "Pro se litigants are not excused from compliance with substantive and procedural law." *See Brown v. Frey*, 806 F.2d 801, 804 (8th Cir. 1985); *see also Alburtis v. John Q. Hammons Hotel Mgmt., LLC*, No. 07-04077-CV, 2008 WL 1787709, at *1 (W.D. Mo. April 17, 2008) (deeming defendant's statement of facts admitted where pro se plaintiff did not respond to the defendant's statement of facts); *Nw. Bank & Trust Co. v. First Ill. Nat'l Bank*, 354 F.3d 721, 724-25 (8th Cir. 2003) (finding no abuse of discretion where the district court applied a local rule and deemed plaintiff to have admitted defendant's statement of facts in its motion for summary judgment). Thus, because of Sours's failure to comply with Local Rule 56.1(a), the Court deems as admitted all Defendants' statements of material fact, and has drawn all inferences from those facts in Sours's favor.

Sours denied consent. Next, Karr requested assistance from the Joplin Police Department. At approximately 7:29 p.m., Joplin Police K-9 Officer Bland arrived on the scene. Karr informed Bland that the basis for his request for assistance was (1) Sours's history of drug arrests and convictions, (2) Karr's observation of Sours leaving a home known to have residents who possess and manufacture methamphetamine, and (3) Karr's belief that Sours and Wisek's behavior seemed suspicious.

Bland then led the K9 around Sours's truck. The K-9 alerted at both the driver and passenger doors. Sours then yelled at Bland to get the K-9 away from his vehicle. Karr advised Sours to be quiet. After Sours continued to yell at Bland, Karr took Sours into custody for obstruction and placed him in the back of his patrol vehicle. Karr and Bland then searched Sours's vehicle, finding a cigarette pack containing two used syringes and empty plastic bags. Karr then transported Sours to the Joplin jail.

The next day, Karr contacted Detective Darren McIntosh of the Joplin Police Department to inform him that Sours had been arrested and his vehicle towed. Throughout March, April, and May 2014, McIntosh had been investigating two thefts for which Sours was the only suspect. The first was a March 23, 2014, attempted theft of a concession trailer from a Food 4 Less grocery store parking lot, and the second was an April 13, 2014, theft of a construction trailer and tools belonging to Crossland Construction Company. The employees of Food 4 Less reported that the license plate of the vehicle owner who attempted to steal the trailer was Missouri 4CT020. Video surveillance at Crossland Construction identified a suspect vehicle with license plate Missouri 4CT020. The vehicle with license plate Missouri 4CT020 is registered to Sours. Additionally, surveillance video from Crossland Construction indicated that the suspect driver had a white Fu Mahchu style mustache, which matched a photograph of Sours.

After Sours's vehicle was towed, an inventory search was conducted. During the search, officers found a blue Miller welder and a Dewalt grinder matching the description of items that Crossland Construction reported stolen. Based on McIntosh's investigation—including license-plate identification and the items found in Sours's vehicle—he prepared and forwarded a statement of probable cause to the Jasper County Prosecuting Attorney's Office on June 9, 2014. On June 16, 2014, a warrant was issued for Sours's arrest for receiving stolen property pursuant to Mo. Rev. Stat. § 570.080.

On July 25, 2015, Sours sued Officers Karr and Bland, Detective McIntosh, and Duquesne Police Chief Tommy Kitch, alleging a violation of his constitutional rights under 42 U.S.C. § 1983. Sours's complaint (Doc. 1) includes claims arising out of his traffic stop, the search of his vehicle, his arrest, and the statement of probable cause that led to his arrest. All Defendants now move for summary judgment.

**Discussion**

**I. Officer Karr's traffic stop of Sours's vehicle did not violate Sours's constitutional rights, and Karr is entitled to qualified immunity.**

Karr argues that he is entitled to qualified immunity for pulling over Sours's vehicle, searching the vehicle, and arresting Sours. "When performing discretionary functions, government officials are shielded from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Avalos v. City of Glenwood*, 382 F.3d 792, 798 (8th Cir. 2004) (internal citation omitted). Qualified immunity is "available to all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal citation omitted). "Courts conduct a two-part inquiry to determine whether qualified immunity protects a government official from liability: (1) whether the facts taken in a light most favorable to [Sours] make out a violation of a constitutional . . .

4

right; and (2) whether that right was clearly established at the time of the alleged violation." *See Buckley v. Ray*, 848 F.3d 855, 863 (8th Cir. 2017). "Courts may decide 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Boude v. City of Raymore*, 855 F.3d 930, 933 (8th Cir. 2017) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). "Because an official is entitled to qualified immunity unless both prongs are satisfied, our analysis will end if either of the two is not met." *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017).

### A. Karr had probable cause to stop Sours.

"The first step in a § 1983 analysis is to isolate the precise constitutional violation which is alleged." *Rogers v. City of Little Rock*, 152 F.3d 790, 796 (8th Cir. 1998). Here, Sours claims that the traffic stop violated his Fourth Amendment right to be free from unconstitutional search and seizure. *United States v. Payne*, 534 F.3d 948, 951 (8th Cir. 2008) ("[A] vehicle stop constitutes a seizure under the Fourth Amendment."). "The Fourth Amendment permits an investigative stop of a vehicle if officers have a reasonable suspicion that the vehicle or its occupants are involved in criminal activity." *United States v. Smith*, 648 F.3d 654, 658 (8th Cir. 2011). "Any traffic violation, however minor, provides probable cause for a traffic stop." *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994).

Here, Karr observed Sours commit a traffic violation, giving him probable cause to stop Sours's vehicle.[2] *See id.* Once Karr stopped Sours, he was entitled to conduct an investigation "reasonably related in scope to the circumstances that justified the interference in the first place." *United States v. Cummins*, 920 F.2d 498, 502 (8th Cir. 1990) (internal citation omitted). This includes asking for Sours's driver's license and registration, requesting that he sit in the patrol

---

[2] Sours's factual assertion that Karr provided several conflicting reasons for the stop before saying he observed Sours commit a traffic violation does not comply with Local Rule 56.1(a) and "clearly contradicts" the dash-camera video. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court does not credit Sours's version.

5

car, and asking about his destination and purpose. *Bloomfield*, 40 F.3d at 915. The reasonable scope of the initial traffic stop, therefore, extended up to the moment Karr asked Sours if he could search the vehicle. *See id.* at 916.

### B. Karr had reasonable suspicion to extend the traffic stop.

Karr contends that there was reasonable suspicion to search Sours's vehicle. "An officer conducting a traffic stop who discovers information leading to reasonable suspicion of an unrelated crime may extend the stop and broaden the investigation." *United States v. Woods*, 829 F.3d 675, 679 (8th Cir. 2016). To establish reasonable suspicion, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" further investigation. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The concept of reasonable suspicion is "not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Instead, when determining whether reasonable suspicion exists, courts consider the totality of the circumstances. *United States v. Woods*, 747 F.3d 552, 556 (8th Cir. 2014).

Here, several factors support Karr's reasonable suspicion of criminal activity, and therefore justify the extension of the traffic stop. First, Sours acknowledged his past criminal history involving drugs. *See United States v. Bowman*, 660 F.3d 338, 345 (8th Cir. 2011) (finding defendant's acknowledgement of past criminal history of drug crimes supported reasonable suspicion during a traffic stop). Second, Karr observed Sours leaving a house known for methamphetamine activity. *See United States v. Stringer*, 739 F.3d 391, 394 (8th Cir. 2014) (finding trooper's observation of vehicle leaving a house known for drug transactions supported reasonable suspicion during traffic stop). Based on these facts, under the totality of the circumstances, Karr had reasonable suspicion to extend the stop and request a K-9 search.

### C. The search of Sours's vehicle was permissible.

Karr argues that he properly conducted a search of Sours's vehicle. "A dog's identification of drugs in luggage or in a car provides probable cause that drugs are present." *Bloomfield*, 40 F.3d at 919. "Once probable cause is established, a car can be searched without a warrant under the automobile exception to the warrant requirement." *Id.* Here, it is undisputed that the K-9 alerted during a walk-around of Sours's vehicle. Therefore, there was probable cause to believe that drugs were present, and further search of the vehicle was permissible. *See id.*

### D. Karr is entitled to absolute immunity for his testimony.

Karr is entitled to absolute immunity on Sours's claim that he gave false testimony at a preliminary hearing on October 3, 2014. *See Helmig v. Fowler*, 828 F.3d 755, 760-61 (8th Cir. 2016) (finding that a law enforcement officer who serves as a trial witness enjoys absolute immunity from any civil claim premised on his testimony (citing *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983))); *Jones v. Clinton*, 72 F.3d 1354, 1358 (8th Cir. 1996) ("[W]itnesses are entitled to absolute immunity from civil suit for testimony given in judicial proceedings.").

### E. Karr is entitled to qualified immunity.

Viewing the undisputed material facts in the light most favorable to Sours, Karr did not violate Sours's constitutional rights. Therefore, this Court need not address the "clearly established" prong of the qualified immunity test. *See Kulkay*, 847 F.3d at 642 ("Because an official is entitled to qualified immunity unless both prongs are satisfied, our analysis will end if either of the two is not met."). Karr is entitled to summary judgment based on qualified immunity.

## II. Officer Bland's K-9 search did not violate Sours's constitutional rights, and Bland is entitled to qualified immunity.

Officer Bland argues that he is entitled to qualified immunity. He claims that, viewing the undisputed facts in the light most favorable to Sours, the K-9 search did not violate Sours's Fourth Amendment rights.

In the absence of reasonable suspicion, police may not extend an otherwise-completed traffic stop in order to conduct a dog sniff. *See Woods*, 829 F.3d at 679. Here, Officer Karr had reasonable suspicion to search Sours's vehicle. *See* supra Part I.B. The undisputed facts show that Karr informed Bland about his basis for reasonable suspicion. Therefore, it was permissible for the Officers to extend the traffic stop in order to conduct a dog sniff. *See Woods*, 829 F.3d at 679.

Bland argues that the length of time Sours spent waiting for the K-9 unit to arrive was not unreasonable and did not exceed the permissible scope of a *Terry* stop. A detention may become a *de facto* arrest if it lasts for an unreasonably long time, but there is no rigid time limit on an investigatory detention. *See United States v. Sharpe*, 470 U.S. 675, 685 (1985). Here, Karr stopped Sours's vehicle at 7:16 p.m., and Bland arrived at the scene with the K-9 at approximately 7:29 p.m. The roughly 13 minutes between the initial stop and the K-9 unit's arrival at the scene did not convert the lawful stop into an unreasonable detention. *See United States v. Maltais*, 403 F.3d 550, 555-58 (8th Cir. 2005) (holding that 90-minute wait for a K-9 unit was reasonable); *United States v. White*, 42 F.3d 457, 460 (8th Cir. 1994) (finding 80-minute wait for K-9 unit was reasonable).

Viewing the undisputed material facts in the light most favorable to Sours, Bland did not violate Sours's constitutional rights. Therefore, this Court need not address the "clearly established" prong of the qualified immunity test. *See Kulkay*, 847 F.3d at 642 ("Because an

official is entitled to qualified immunity unless both prongs are satisfied, our analysis will end if either of the two is not met."). Bland is entitled to summary judgment based on qualified immunity.

**III. Detective McIntosh had at least arguable probable cause to arrest Sours, and he is entitled to qualified immunity.**

Detective McIntosh asserts he is entitled to qualified immunity on Sours's claim that he was falsely arrested based on McIntosh's false probable cause statement. In connection with a Fourth Amendment false arrest claim, the relevant inquiry is whether the officers had arguable probable cause to arrest Sours. *See Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000). "Probable cause exists if the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed an offense at the time of the arrest." *Id.* (internal citation omitted). "Therefore, law enforcement officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so—provided that the mistake is objectively reasonable." *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 228–29 (1991)). "Stated otherwise, [t]he issue for immunity purposes is not probable cause in fact but arguable probable cause." *Id.* (internal citation omitted).

In this case, McIntosh alleges he had probable cause to believe that Sours received stolen property. The facts McIntosh knew at the time he signed the probable cause statement included: 1) on March 23, 2014, an individual had attempted to steal a concession trailer at Food 4 Less; 2) on April 13, 2014, Crossland Construction reported a job site trailer containing a blue Miller portable welder had been stolen; 3) the individual suspected in both thefts was driving an older gray truck with license plate number Missouri 4CT020; 4) the vehicle with license plate number Missouri 4CT020 is registered to Sours; 5) surveillance video indicated that the suspect driver had a white Fu Mahchu style mustache, which matched a photograph of Sours; 6) on May 19,

9

2014, McIntosh learned that Karr had stopped Sours driving a vehicle with license plate Missouri 4CT020; and 7) Sours's vehicle contained a blue Miller welder whose serial number matched the one Crossland Construction reported stolen. These facts, taken in their totality, justified McIntosh's belief that Sours was in receipt of stolen property. *See Smithson*, 235 F.3d at 1062.

Viewing the facts in the light most favorable to Sours, McIntosh had at least arguable probable cause—at the time he signed Sours's Statement of Probable Cause—that Sours received stolen property. Therefore, McIntosh is entitled to summary judgment based on qualified immunity.

**IV. Police Chief Kitch is entitled to summary judgment.**

Duquesne Police Chief Kitch argues that he is entitled to summary judgment. Kitch may be subject to individual liability under § 1983 as a supervisor for failing to adequately receive, investigate, or act upon complaints against police department employees if he:

(1) Received notice of a pattern of unconstitutional acts committed by subordinates;

(2) Demonstrated deliberate indifference to or tacit authorization of the offensive acts;

(3) Failed to take sufficient remedial action; and

(4) Such failure proximately caused injury.

*See Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996). Sours's claim against Kitch fails because, as discussed above, this Court has found that Sours suffered no constitutional injury. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); *Saunders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007) ("Without a constitutional violation by the individual officers, there can be no § 1983 or *Monell* failure to train municipal liability."). Kitch is entitled to summary judgment.

**V. Defendants are entitled to summary judgment on Sours's conspiracy claim.**

Sours alleges that all Defendants conspired to deprive him of his constitutional rights. A plaintiff must "prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 conspiracy claim." *See Draper v. City of Festus*, 782 F.3d 948, 953 (8th Cir. 2015). Since Sours cannot show that he was deprived of a constitutional right, his conspiracy claim fails.

**Conclusion**

For the reasons explained above, Karr and Kitch's Motion for Summary Judgment (Doc. 92), McIntosh's Motion for Summary Judgment (Doc. 89), and Bland's Motion for Summary Judgment (Doc. 86) are GRANTED. Defendants' Motions to strike Plaintiff's Sur-Reply are DENIED AS MOOT (Docs. 100 & 101).

**IT IS SO ORDERED.**

Date:   July 18, 2018  　　　　　　　　　　/s/ Greg Kays  
　　　　　　　　　　　　　　　　　　　　GREG KAYS, CHIEF JUDGE  
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT